ANNA S. WALKER, *Appellant*, v. WASHINGTON STATE THEATRES, INC., *Respondent.*[1]

*Reynolds, Ballinger, Hutson & Boldt,* for appellant.
*Pearson & Potts,* for respondent.

PARKER, J.—The plaintiff, Mrs. Walker, seeks recovery of damages from the defendant, Theatres, Inc., for personal injuries which she claims she suffered as the result of its negligence in its maintenance of steps, for public use in one of its theatres, on which she tripped and fell, causing the injuries of which she complains.

The case proceeded to trial in the superior court of King county, sitting with a jury. Upon the close of the evidence introduced on behalf of Mrs. Walker, counsel for the Theatres, Inc., by appropriate motion for nonsuit, challenged the sufficiency of the evidence to entitle Mrs. Walker to any recovery, and asked the court to so decide as a matter of law, to withdraw the

[1]Reported in 5 P. (2d) 981.

case from the consideration of the jury and dismiss the case. This motion was by the court granted, and judgment of dismissal rendered accordingly, from which Mrs. Walker has appealed to this court.

In a part of the theatre for the use of the public, there was, at the time in question, a short hallway leading off the mezzanine floor, at the end of which hallway there was a flight of three steps leading down into the ladies' lounge. The hall, the steps and the lounge were fully carpeted. They were somewhat dimly lighted, but were, manifestly, sufficiently lighted to enable one to use the steps in safety by the exercise of ordinary care. Mrs. Walker and her friend, Mrs. Charter, attended, that evening, the first show, concluding at about nine o'clock. They then went out of the auditorium part of the theatre up onto the mezzanine floor. They then went into the hall to near the top of the steps, Mrs. Walker proceeding down the steps into the lounge, expecting to presently return. Mrs. Charter waited in the hall near the top of the steps for Mrs. Walker's return. Mrs. Walker did not experience the slightest difficulty in safely going down the steps. Presently she returned, and, as she was proceeding up the steps, fell thereon and was injured.

Aside from the testimony of Mrs. Walker's physician touching the nature of her injuries, the whole of the evidence consists of the testimony of Mrs. Walker and her friend, Mrs. Charter, and two photographs of the steps. Mrs. Walker testified, on direct examination, in part, as follows:

"Q. You attended the theatre in the evening with Mrs. Charter? A. Yes, sir. Q. Tell in your own way what occurred. A. After the first show was over, we went up to the mezzanine floor, passed through the little passageway leading from the mezzanine floor to the ladies' lounge, returning across the lounge and the

three steps leading from the lounge up to the little hallway that goes out to the mezzanine floor. I had come up to the second step with my left foot, and then stepped with my right foot onto the floor; and, as the momentum of my body carried me on, the left foot caught on something and jerked my toe back as my body went on, and I threw my hands this way, and some lady coming from the mezzanine floor just reached out her hands and caught me as I fell almost to the floor, and Mrs. Charter caught me on the other side.''

She further testified, on cross-examination, in part, as follows:

''Q. You went down the stairs when you went down in the rest room? A. Yes, sir. Q. Did you have trouble going down stairs? A. No. Q. Saw that all right? A. Yes, I saw that when I came up, too. Q. The light was all right so far as that is concerned? A. It was very dim. Q. You could see the stairs then? A. Not perfectly well, but you could see them. Q. It was more dangerous coming down than coming up, wasn't it? A. That would be a matter of opinion, but I think it would be just the same. Q. You got up the first step all right, didn't you? A. Yes. Q. You don't know what it was caused you to stumble, do you? A. Something caught my foot. Q. You didn't know what it was? A. Well, there was nothing else there that I know of on the stairs except the carpet.''

Mrs. Charter testified, on direct examination, in part, as follows:

''Q. You were with Mrs. Walker, the plaintiff in this case, on the night that she was injured? A. Yes, sir. Q. Tell the jury what occurred. A. We saw the show there and then Mrs. Walker said that she would go to the ladies' lounge upstairs. I went with her as far as the little corridor which connects the ladies' lounge with the mezzanine floor. She was away some little time, and I stayed in the little corridor waiting for her. She came towards me at last, and there was nobody else coming along the stairs at that time. I saw her suddenly fall forward. A lady, who was going into

the lounge, ran to her assistance and between us we got her out onto the mezzanine floor on a comfortable seat. Q. I will ask you what, if anything, you did after Mrs. Walker was injured with reference to observing the conditions of the steps. A. After we got her into a seat and she was resting, I went back for my own curiosity to see how she could have stumbled on the short steps. Q. What did you find? A. I found three steps of carpet, both tread and rise. I am sure the carpet on the tread was perfectly firm and all right, but the carpet on the rise was loose and it bulged, and I could hold it like that in my hand. It was not torn. I thought she had caught her foot on that. Q. I will ask you to illustrate by the use of this carpet, so that the jury can see just how the carpet was on the rise (using piece of carpet). A. I could hold it as I am holding it right now. It was loose enough so by my taking the two sides of the carpet I could hold it between my thumb and finger so I could pull it right out.''

On cross-examination, she further testified, in part, as follows:

''Q. Mrs. Charter, you gathered in your hand, as you said, about like that, and found it loose? Take it in your hand. A. I know that I leaned down and got the carpet like that. Q. And you have in your hand about an inch doubled over? A. Rather more. Q. Well, about an inch and a quarter, is that right? A. That would be the amount, probably a little more.''

Manifestly, this was an ordinary three-step stairway, with the average width of treads and risers. There is no room for arguing that the steps were in any respect defective or dangerous to pass over, up or down, unless it be in the fact that on the riser of the second step, the carpet was somewhat loose and bulged, as described by Mrs. Charter. No one else testified as to that condition of the carpet. Her testimony, we think, does not in any substantial degree support the theory that Mrs. Walker was any more likely to stumble and fall because of the bulge in the carpet

on the riser of the second step than because of the riser and outer edge of that step, had there been no bulge in the carpet on the riser.

We do not overlook the fact that the light was somewhat dim, but it is made plain by Mrs. Walker's own testimony that the dimness of the light did not prevent her seeing the steps both going down and going up. To decide that the bulge in the carpet caused Mrs. Walker to stumble and fall would, we think, be but the result of conjecture and speculation.

The judgment is affirmed.

TOLMAN, C. J., MITCHELL, BEELER, and HERMAN, JJ., concur.

[No. 23310. Department One. December 15, 1931.]